**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JAMES E. STANTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-465-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff James E. Stanton, and Plaintiff's Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [DE 15], filed June 4, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 16, 2018, the Commissioner filed a response, and on July 30, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.      Background**

On January 26, 2015, Plaintiff filed an application for benefits alleging disability beginning December 1, 2006. Plaintiff's application was denied initially and upon reconsideration. On January 13, 2017, Administrative Law Judge ("ALJ") Diane S. Davis held a video hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On Feburary 7, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant has not engaged in substantial gainful activity since January 26, 2015, the application date.

2. The claimant has the following severe impairments: depression.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: The claimant cannot climb ladders, ropes, or scaffolds, and should avoid work involving hazards such as unprotected heights and moving mechanical parts. He can understand, remember, and carry out simple, routine tasks involving only simple, work-related decisions. He can adapt to routine workplace changes. The claimant can work in proximity to others and tolerate occasional interaction with others. He can persist in such activities in two-hour intervals with adequate pace and perseverance.

5. The claimant has no past relevant work.

6. The claimant was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 26, 2015, the date the application was filed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42

U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.

1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review*." Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.    Analysis

Plaintiff argues that the ALJ's assessment of Plaintiff's residential functional capacity ("RFC") was not supported by substantial evidence and that she failed to properly evaluate Plaintiff's subjective complaints. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace, and limited him to unskilled, simple work: "He can understand, remember, and carry out simple, routine tasks involving only simple, work-related decisions. He can adapt to routine workplace changes. The claimant can work in proximity to others and tolerate occasional interaction with others. He can persist in such activities in two-hour intervals with adequate pace and

perseverance." As an initial matter, the Seventh Circuit has repeatedly held that limiting a claimant to simple, routine or repetitive tasks is not sufficient to account for his difficulties in concentration, persistence, or pace. *See Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations).

The ALJ apparently determined Plaintiff's functional limitations without reference to a medical opinion. She granted "little weight" to psychiatrist Dr. Prakash Varghese, "partial weight" to physician Dr. Rene Roberts, and "some weight" to the State agency doctors, who were not able to review all of the record evidence. Although the ALJ was not required to accept any particular opinion, she was still required to support her RFC findings with the opinions of medical professionals. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.").

The ALJ explained that a 2015 consultative examination of Plaintiff was "not wholly indicative of a need to adopt further functional limitations" because "while the claimant reported fatigue, memory loss, spacing out, and anger . . . the claimant displayed good social skills and

5

etiquette. His speech and language functions were adequate, and he could think abstractly. His memory was regarded as fair . . . [and he could perform] math calculations." The ALJ did not explain how this, or any of the other evidence, led to the specific finding that Plaintiff could "persist in activities in two-hour intervals with adequate pace and perseverance," leaving the Court without a "'logical bridge' between the evidence and [the ALJ's] conclusions." *O'Connor-Spinner*, 627 F.3d at 618; *see also Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citations omitted). The effect is that the ALJ substituted her judgment for that of medical professionals. The Seventh Circuit has warned that ALJs should not "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Fashioning a claimant's limitations from examination results without a medical opinion is particularly troublesome in a case of mental illness, given that the patient's capabilities may vary considerably from one examination to the next. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] plaintiff who suffers from mental illness will have better days and worse days, so a snapshot of any single moment says little"); *see also Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (explaining that "health professionals, in particular psychiatrists, not lawyers or judges, are the experts" on mental illness).

Plaintiff also argues that the ALJ failed to properly analyze Plaintiff's own subjective complaints. The ALJ made a series of inferences that she said supported a "partially consistent

finding" as to Plaintiff's complaints. The ALJ found that "the claimant has a poor work history which does not show good motivation to work." The ALJ cited no evidence for the proposition that Plaintiff's poor work history was caused by a lack of motivation, and apparently did not consider the contrary inference: that the limitations Plaintiff alleges may have hindered him from getting and keeping a job. *See Sarchet v. Chater*, 78 F.3d 305, 308 (7th Cir. 1996) (rejecting ALJ's inference that Plaintiff's credibility was undermined by poor work history given the "list of medical ailments from which [the claimant] suffers"). The ALJ pointed to Dr. Roberts's opinion that Plaintiff could participate in a job training program, but that is not the same as performing, consistently, in an employment context – as Dr. Roberts acknowledged in treatment notes: "[A]t this time he can participate in job training program. Whether or not he can cary [sic] out the duties of a specific job is to be determined." AR 582.

The ALJ also noted that Plaintiff failed to comply with his "largely conservative" treatment plan, as evidence that his complaints were not entirely consistent with the record. The ALJ pointed to no evidence that a more aggressive treatment plan would have alleviated Plaintiff's symptoms. Furthermore, when failure to seek medical treatment or comply with treatment recommendations is used as a factor in determining whether a claimant's statements regarding his symptoms are to be believed, an ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)). The ALJ found that Plaintiff's failure to use a CPAP machine as prescribed to treat his sleep apnea

was evidence that it does not affect his functioning, contrary to Plaintiff's complaints that he suffered fatigue and had to nap and take breaks during the day. At the hearing, Plaintiff testified that he had difficulty breathing after trying the CPAP machine, that he called the prescribing doctor to tell him he was no longer using the machine because he was not comfortable with it, and that "no one recommended" an alternative. Given the Plaintiff's testimony that the prescribed treatment caused him discomfort, and the absence of testimony or record evidence indicating whether alternatives to the machine would have alleviated Plaintiff's symptoms, the ALJ should not have simply concluded that Plaintiff's sleep apnea "does not adversely affect his functioning." *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (An ALJ must "explore the claimant's reasons for the lack of medical care before drawing a negative inference. . . . [Those reasons] may include . . . ineffectiveness of further treatment, or intolerable side effects.").

On remand, the ALJ is instructed to draw a logical bridge from the evidence as it appears in the record to his or her conclusions about Plaintiff's RFC, with reference to medical opinion, "instead of determining the significance of particular medical findings [herself]." *Moon*, 763 F.3d at 722. To the extent the ALJ draws any inferences about Plaintiff's treatment plan or non-compliance with that plan, he or she must analyze the evidence in the record as to the reasons and solicit additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)).

The ALJ is also reminded that performing activities of daily living on a limited basis, on its own, does not show that a person can hold down a full-time job. *See Bjornson v. Astrue*, 671 F.3d

640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

## IV.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 26th day of February, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record